IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE AMERICAN INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 99-721C |
| | ) | Judge Allegra |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(b) of the Rules of the United States Court of Federal Claims ("RCFC"), and the Court's October 21, 2003 order, defendant, the United States, respectfully requests that the Court enter summary judgment in our favor because there are no genuine issues of material fact in this case and defendant is entitled to judgment as a matter of law. In support of our motion, we rely upon plaintiff's pleadings, our brief, and the accompanying Proposed Findings of Uncontroverted Facts.

I. The Nature Of This Case

Plaintiff, American Insurance Company ("American"), is a surety bond company that issued payment and performance bonds on behalf of G & C Enterprises, Inc. ("G & C") in connection with a contract to perform construction at McGuire Air Force Base, New Jersey ("the contract"). Comp. 6 - 9. [1] The contract was awarded to G & C on February 14, 2003 for the construction of an aircraft parking apron and jet fuel storage facility for the firm fixed-price of $10,380,390. App. 1.[2]

---

[1]"Comp.__" refers to a paragraph of plaintiff's complaint.

[2]"App. __" refers to a page of the appendix attached to Defendant's Proposed Finding of Uncontroverted Fact, filed concurrently with this motion.

G & C encountered difficulty completing the project and American became involved in management of the contract in order to protect its interests. Comp. 11, 17. At the time American first contacted the contracting officer, the Government had provided G & C progress payments amounting to approximately 97 percent of the contract price. Comp. 18. Although American exercised de facto managerial control of the project at this time, it did not enter a default against G & C or execute a takeover agreement with the Government. Comp. 16 - 17. Moreover, the Government and American agreed that future payments upon the contract would continue to be made to G & C. App. 1 - 2.

American's suit in this Court asserts that at the time American became involved in contract administration, only 80 percent of the contract work had been completed although 97 percent of the value of the contract had been paid to G & C as progress payments. Comp. 18. American advances four different theories to support its contention that it should be paid the difference between the amount of money paid by the Government to G & C and the value of the actual work completed, or $842,000. These theories are: (1) that the Government breached the "three-party contract of suretyship" through its alleged failure to properly administer its contract with G & C; Comp. 24 - 29; (2) that the Government breached its "fiduciary duty" to American by failing to protect the contract balance on behalf of American; Comp. 30 - 34; (3) that American should be equitably subrogated to the Government in the amount of the completion costs; and (4) that the Government breached its "equitable duties" to American through its failure to implement a contract management system which would protect American's rights. Comp. 38 - 40.

II. Statement Of The Facts

The relevant facts may be found in the Defendant's Proposed Findings of Uncontroverted Facts, filed concurrently with this brief.

III. American's Claims Present No Basis For Recovery From The Government

As will be discussed at greater length below, a surety's lawsuit against the Government in this Court is generally limited to circumstances involving the theory of equitable subrogation of funds paid to the contractor after the surety has notified the Government of that contractor's default. See Insurance Company of the West v. United States, 243 F.3d 1367, 1369-70 (Fed. Cir. 2001) ("ICW"). The surety and the Government have no contractual relationship which could support suit. ICW, 243 F.3d at 1370. Likewise, the Government's equitable duties to the surety are only triggered upon notice from the surety, itself, that the surety is in default or that payment should be made to the surety. Fireman's Fund Insurance Company v. United States, 909 F.2d 495, 499 (Fed. Cir. 1990). Because American did not inform the Government that G & C was in default at the time of the contested progress payments or ever request that progress payments be made to anybody but G & C, it cannot now assert that the Government breached any duty owed it.

A. Standards for Summary Judgment

The familiar standards of summary judgment need only a brief restatement here. The procedure of summary judgment is properly regarded not as a disfavored shortcut, but rather as an integral part of the Court rules as a whole, designed to secure a just, speedy and inexpensive determination of every action. Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 89 (1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)); accord Sweats Fashions, Inc.

v. Pannill Knitting, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987). "The focus in determining whether summary judgment is appropriate is the lack of disputed material facts. A material fact has been defined as a fact that will make a difference in the outcome of a case." Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied, 361 U.S. 843 (1959). Stated differently, only disputes over facts that might affect the outcome of a suit will properly prevent an entry of judgment. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).

B. American Cannot Assert A Contract Claim Against The Government

Count I of American's complaint alleges that the Government violated a three-party contract with it and G & C. Although there is indeed a three-party relationship among the parties, see ICW, 243 F.3d at 1370, the Court of Appeals for the Federal Circuit ("the Federal Circuit") has squarely rejected the notion that a suretyship creates a contractual agreement with the Government. Id. at 1370 (citing Ransom v. United States, 900 F.2d 242, 244-45 (Fed. Cir. 1990) and Admiralty Construction, Inc. v. Dalton, 156 F.3d 1217, 1220-21 (Fed. Cir. 1998)); see also Fireman's Fund, 909 F.2d at 499. Thus, this claim is not supportable by the law.

C. American Cannot Assert That The Government Breached Fiduciary Or Equitable Duties Due It

Counts II and IV of American's complaint assert that the Government violated fiduciary and equitable duties allegedly owed the surety. Simply put, American has no basis to maintain a suit for breach of such duties in this Court. The Government can find no authority for the proposition that it owes a fiduciary or other general equitable duty to a surety who provides payment and performance bonds to a Government contractor. Moreover, the Federal Circuit has sharply limited the duties the Government owes a surety for its failure to preserve contract funds.

In Fireman's Fund, the Federal Circuit rejected a surety's attempt to impute broad equitable duties to the Government for the retainage of contractual funds. As the court stated:

> By definition and agreement, the surety protects the government's interest, not the other way around . . . Only when the surety may be called upon to perform, that is, only when it becomes a party to the bonded contract, should the government owe it any duty. The surety knows best when this may occur; consequently, only notice by the surety triggers the government's equitable duty.

909 F.2d at 499. Cf. Arvanis v. Noslo Engineering Consultants, Inc., 739 F.2d 1287, 1292 (7th Cir. 1984) (dismissing claim for monies not retained by Government). Thus, with an exception to be discussed below, the Government's duty to retain monies under the contract on behalf of a surety is only triggered by request from that surety. Because American never requested that the Government retain money on its behalf, it cannot now claim that the Government breached any duty to it. Indeed, because American ultimately requested that progress payments continue to be made to G & C, we have some difficulty understanding their claim, since, at American's request, all contract funds were ultimately paid to G & C.

There is an exception to the rule in Fireman's Fund, although that exception does not apply here. In National Surety Corp. v. United States, 118 F.3d 1542 (Fed. Cir. 1997), the Federal Circuit held that a surety could sue the Government for its failure to comply with contractual provisions which required it to withhold specified amounts of funds until contractually specified milestones had been reached. 118 F.3d at 1547. The basis of National Surety was that, when the contract gave the Government no discretion to depart from a retainage requirement, the surety relied upon such a mandatory contract provision in its assessment of risk. Id. This is consistent with Fireman's Fund, which held that "only the contract" could limit the Government's flexibility in resolving payment disputes. 909 F.2d at 499.

Like the circumstances in Fireman's Fund, but unlike National Surety, the contract here does not limit the Government's flexibility in making contract payments. Although the contract contains two provisions relating to payments upon the contract, only the first is relevant, for it applies to "Payments Under Fixed Price Construction Contracts." See App. 6 - 15. This provision (from Federal Acquisition Regulation 52.232-0005) provides a maximum retainage of 10 percent, but does not require the contracting officer to retain any of the progress payment. App. 6 - 8. Thus, no contract provisions give rise to a governmental duty to protect contract funds for the surety until the surety makes such a request.

D. American's Right To Equitable Subrogation Did Not Attach

Just as Fireman's Fund precludes a surety from asserting a generalized equitable duty to protect contract funds without notice from the surety, no claim for such funds under the theory of equitable subrogation can be made for funds disbursed prior to the assertion of rights by the surety. This black-letter result is based upon the legal underpinning of the theory of equitable subrogation. Here, it compels dismissal of the claim because American Insurance never directed the Government to cease payment to G & C.

Equitable subrogation is based upon the common law concept that the surety, who pays the debt of the contractor, is entitled to the rights of that contractor to be reimbursed. Transamerica Insurance Company v. United States, 989 F.2d 1188, 1194 (Fed. Cir. 1993) (quoting Pearlman v. Reliance Insurance Company, 371 U.S. 132, 137 (1962)). Thus the surety "steps into the shoes" of the contractor when it takes over the contract. E.g., ICW, 243 F.3d at 1375; United Electric Company v. United States, 647 F.2d 1082, 1086 (Ct. Cl. 1981). "It is an elementary law of suretyship 'that one cannot acquire by subrogation what another whose rights

he claims did not have.'" Id. (quoting United States v. Munsey Trust Co., 332 U.S. 234, 242 (1947)). See also Globe Indem. Co. v. United States, 84 Ct. Cl. 587, 595 (1937) ("The party for whose benefit the doctrine of subrogation is exercised can acquire no greater rights than those of the party for whom he is substituted"). Under a Government contract, of course, the contractor is only entitled to be paid the balance of the contract. Accordingly, upon assuming the rights of the contractor through subrogation, the surety is only entitled to payment of the existing contract balance from the Government.

Bearing this in mind, it should come as no surprise that the case law universally describes the right of equitable subrogation as attaching to contract funds in existence at the time the surety notifies the Government of its intervention. See, e.g., ICW, 243 F.3d at 1371 (surety may sue for retainage and "amounts paid to the contractor after the surety had notified the government of the default by the contractor" (emphasis added)); Balboa Insurance Company v. United States, 775 F.2d 1158, 1162 (Fed. Cir. 1985).

American never notified the Government that it held G & C in default, nor did it direct the Government to make payments to it instead of G & C. To the contrary, American directed that future contract payments continue to be made to G & C. Hence, there is no basis for equitable subrogation, which begins, at the earliest, when the surety notifies the Government of the default by the contractor. To the extent that American is claiming that its involvement in contract administration should provide it equitable subrogation rights (an assertion which we would not concede), the result remains the same: the payments which American's complaint asserts were improper were all made to G & C prior to any triggering event by which American can claim it notified the Government of its intention to become more involved in the contract.

CONCLUSION

For the reasons stated above, the United States respectfully request that the Court grant our motion for summary judgment and dismiss plaintiff's complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

s/J. Reid Prouty
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-7586
(202) 514-7969 (fax)
Attorneys for Defendant

OF COUNSEL:
J. MACKEY IVES
Department of the Army
Arlington, VA

December 22, 2003