IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN INSURANCE<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No.99-721C<br>(Judge Allegra) |

DECLARATION

I, John W. Simms, declare as follows:

1. I am currently employed as a Procuring Contracting Officer, New Jersey National Guard, Headquarters, U.S. Property & Fiscal Office, Fort Dix, New Jersey. In that capacity, I hold an unlimited warrant to enter into and administer contracts on behalf of the U.S. Army. My responsibilities include solicitation, negotiation, award and administration of complex construction and services contracts on behalf of the New Jersey National Guard and other military services. I have over 15 years' experience in procuring government contracts and have held a contracting officer's warrant since 1992.

2. My official duties include serving as the Army's procuring contracting officer for Contract Number DAHA28-94-C-0002 (herein "the contract"). The contract was awarded to G&C Enterprises Inc. on February 14, 1994 for the construction of an aircraft apron and jet fuel storage facility at McGuire Air Force Base, New Jersey. The total original fixed price for this construction contract was $10,380,390.00.

3. Because this contract was a fixed price construction contract, the contractor was required to obtain payment and performance bonds. G&C obtained performance and payments bonds from America Insurance Inc. by which G&C was the principal, the United States was the oblige, and American was the surety.

4. During the course of this contract, I became aware from various telephone calls and letters from subcontractors that G&C Enterprises Inc. was experiencing some financial difficulties. I discussed this matter with G&C Enterprises Inc. representatives on several occasions and was assured that they would pay their subcontractors and would continue to perform the contract.

5. By letter dated May 23, 1997, American Insurance wrote to me notifying me that G&C Enterprises Inc. was experiencing financial problems. American Insurance Company further notified me that they were soliciting bids from completion contractors

to finish the project. It was agreed upon and understood by both parties that progress payments would be made to G&C Enterprises, Inc. and then in turn payments would be made to the completion contractor, with the approval of Cashin Associates, the project manager. American Insurance Company never requested stoppage of progress payments to G&C and never notified the Contracting Officer that defaulting G&C Enterprises, Inc.

6. No provision of the contract required retainage be withheld from the contract payments made to the contractor.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 17th day of December, 2003 at Fort Dix, New Jersey.

JOHN W. SIMMS
MAJOR, US ARMY
Procuring Contract Officer

IN THE UNITED STATES COURT
OF FEDERAL CLAIMS

* * *

THE AMERICAN INSURANCE :
INSURANCE COMPANY, :
Plaintiff, : NO. 99-721C
: Judge Allegra
vs. :
:
THE UNITED STATES, : COPY
:
Defendant. :

* * *

September 30, 2003

* * *

Oral deposition of MAJOR JOHN W. SIMMS, held at the National Guard Training Center, 3601 Technology Drive, Fort Dix, New Jersey 08648, on Tuesday, September 30, 2003 commencing at 10:15 a.m., before Terri L. Ochipinti, Professional Shorthand Reporter and Notary Public.

* * *

ESQUIRE DEPOSITION SERVICES
1880 John F. Kennedy Boulevard
15th Floor
Philadelphia, PA 19103
(215) 988-9191

Q. All right. So at the end of the day, the government's progress reports pay applications and records of payments would all jibe, correct?

A. Yes.

Q. Now, if the allegation is that the government overpaid the contractor, wouldn't you think it would be necessary for the government to look outside that documentation to determine whether or not that indeed occurred?

MR. PROUTY: I'm confused by that question. I'm not sure if you're asking him to evaluate a legal theory or where exactly you're going with it. Perhaps you could rephrase.

BY MR. DEVLIEGER:

Q. Do me a favor. Describe the pay application process on this project, as best you remember.

A. I think it was almost exactly as you just stated. The contractor submitted a payment

application, the contractor submitted a contract progress report, which correlated or jibed, I guess, with that number, and the government reviewed that and then the payment application was made.

Q. Okay. And then if approved, paid, correct?

A. Yes, I'm sorry, yes. Paid to the contractor, right.

Q. Now, in this case, you indicated that upon being put on notice that the surety thought the government overpaid the contractor, you met with Colonel Sain and you reviewed the progress reports and the pay applications and you made the determination that you thought that that didn't occur, correct?

A. Yes.

Q. And you also testified that you didn't evaluate the site by walking the site or do any other kind of investigation, correct?

A. I did not, right.

(ii) Evidence of the amount due under any encumbrance shown in the evidence of title;

(iii) A copy of the current real estate tax assessment of the property or a current appraisal dated no earlier than 6 months prior to the date of the bond, prepared by a professional appraiser who certifies that the appraisal has been conducted in accordance with the generally accepted appraisal standards as reflected in the Uniform Standards of Professional Appraisal Practice, as promulgaged by the Appraisal Foundation.

(End of clause)

1.116 52.229-0005 TAXES--CONTRACTS PERFORMED IN U.S. POSSESSIONS OR PUERTO RICO (APR 1984)

The term "local taxes," as used in the Federal, State, and local taxes clause of this contract, includes taxes imposed by a possession of the United States or by Puerto Rico.

(End of clause)

(AV 7-103.10(c) 1963 NOV)

(AV 1-11.401-3(a))

1.117 52.232-0005 PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS (APR 1989)

(a) The Government shall pay the Contractor the contract price as provided in this contract.

(b) The Government shall make progress payments monthly as the work proceeds, or at more frequent intervals as determined by the Contracting Officer, on estimates of work accomplished which meets the standards of quality established under the contract, as approved by the Contracting Officer. The Contractor shall furnish a breakdown of the total contract price showing the amount included therein for each principal category of the work, which shall substantiate the payment amount requested in order to provide a basis for determining progress payments, in such detail as requested by the Contracting Officer. In the preparation of estimates the Contracting Officer may authorize material delivered on the site and preparatory work done to be taken into consideration. Material delivered to the Contractor at locations other than the site may also be taken into consideration if--

(1) Consideration is specifically authorized by this contract; and

(2) The Contractor furnishes satisfactory evidence that it has acquired title to such material and that the material will be used to perform this contract.

(c) Along with each request for progress payments, the contractor shall furnish the following certification, or payment shall not be made:

I hereby certify, to the best of my knowledge and belief, that--

(1) The amounts requested are only for performance in accordance with

the specifications, terms, and conditions of the contract;

(2) Payments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with subcontract agreements and the requirements of chapter 39 of Title 31, United States Code; and

(3) This request for progress payments does not include any amounts which the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract.

______________________________

(Name)

______________________________

(Title)

______________________________

(Date)

(d) If the Contractor, after making a certified request for progress payments, discovers that a portion or all of such request constitutes a payment for performance by the Contractor that fails to conform to the specifications, terms, and conditions of this contract (hereinafter referred to as the "unearned amount"), the Contractor shall--

(1) Notify the Contracting Officer of such performance deficiency; and

(2) Be obligated to pay the Government an amount (computed by the Contracting Officer in the manner provided in 31 U.S.C 3903(c)(1)) equal to interest on the unearned amount from the date of receipt of the unearned amount until--

(i) The date the Contractor notifies the Contracting Officer that the performance deficiency has been corrected; or

(ii) The date the Contractor reduces the amount of any subsequent certified request for progress payments by an amount equal to the unearned amount.

(e) If the Contracting Officer finds that satisfactory progress was achieved during any period for which a progress payment is to be made, the Contracting Officer shall authorize payment to be made in full. However, if satisfactory progress has not been made, the Contracting Officer may retain a maximum of 10 percent of the amount of the payment until satisfactory progress is achieved. When the work is substantially complete, the Contracting Officer may retain from previously withheld funds and future progress payments that amount the Contracting Officer considers adequate for protection of the Government and shall release to the Contractor all the remaining withheld funds. Also, on completion and acceptance of each separate building, public work, or other division of the contract, for which the price is stated separately in the contract, payment

shall be made for the completed work without retention of a percentage.

(f) All material and work covered by progress payments made shall, at the time of payment, become the sole property of the Government, but this shall not be construed as--

(1) Relieving the Contractor from the sole responsibility for all material and work upon which payments have been made or the restoration of any damaged work; or

(2) Waiving the right of the Government to require the fulfillment of all of the terms of the contract.

(g) In making these progress payments, the Government shall, upon request, reimburse the Contractor for the amount of premiums paid for performance and payment bonds (including coinsurance and reinsurance agreements, when applicable) after the Contractor has furnished evidence of full payment to the surety. The retainage provisions in paragraph (e) of this clause shall not apply to that portion of progress payments attributable to bond premiums.

(h) The Government shall pay the amount due the Contractor under this contract after--

(1) Completion and acceptance of all work;

(2) Presentation of a properly executed voucher; and

(3) Presentation of release of all claims against the Government arising by virtue of this contract, other than claims, in stated amounts, that the Contractor has specifically excepted from the operation of the release. A release may also be required of the assignee if the Contractor's claim to amounts payable under this contract has been assigned under the Assignment of Claims Act of 1940 (31 U.S.C. 3727 and 41 U.S.C. 15).

(i) Notwithstanding any provision of this contract, progress payments shall not exceed 80 percent on work accomplished on undefinitized contract actions. A "contract action" is any action resulting in a contract, as defined in FAR Subpart 2.1, including contract modifications for additional supplies or services, but not including contract modifications that are within the scope and under the terms of the contract, such as contract modifications issued pursuant to the Changes clause, or funding and other administrative changes.

(End of clause)

I.118 52.232-0016 PROGRESS PAYMENTS (JUL 1991)

Progress payments shall be made to the Contractor when requested as work progresses, but not more frequently than monthly in amounts approved by the Contracting Officer, under the following conditions:

(a) Computation of amounts. (1) Unless the Contractor requests a smaller amount, each progress payment shall be computed as (i) 80 percent of the Contractor's cumulative total costs under this contract,

as shown by records maintained by the Contractor for the purpose of obtaining payment under Government contracts, plus (ii) progress payments to subcontractors (see paragraph (j) below), all less the sum of all previous progress payments made by the Government under this contract. Cost of money that would be allowable under 31.205-10 of the Federal Acquisition Regulation shall be deemed an incurred cost for progress payment purposes.

(2) The following conditions apply to the timing of including costs in progress payment requests:

(i) The costs of supplies and services purchased by the Contractor directly for this contract may be included only after payment by cash, check, or other form of actual payment.

(ii) Costs for the following may be included when incurred, even if before payment, when the Contractor is not delinquent in payment of the costs of contract performance in the ordinary course of business:

(A) Materials issued from the Contractor's stores inventory and placed in the production process for use on this contract.

(B) Direct labor, direct travel, and other direct in-house costs.

(C) Properly allocable and allowable indirect costs.

(iii) Accrued costs of Contractor contributions under employee pension or other postretirement benefit, profit sharing, and stock ownership plans shall be excluded until actually paid unless--

(A) The Contractor's practice is to contribute to the plans quarterly or more frequently; and

(B) The contribution does not remain unpaid 30 days after the end of the applicable quarter or shorter payment period (any contributions remaining unpaid shall be excluded from the Contractor's total costs for progress payments until paid).

(iv) If the contract is subject to the special transition method authorized in Cost Accounting Standard (CAS) 410, Allocation of Business Unit General and Administrative Expense to Final Cost Objective, General and Administrative expenses (G&A) shall not be included in progress payment requests until the suspense account prescribed in CAS 410 is less than--

(A) Five million dollars; or

(B) The value of the work-in-process inventories under contracts entered into after the suspense account was established (only a pro rata share of the G&A allocable to the excess of the inventory over the suspense account value is includable in progress payment requests under this contract).

(3) The Contractor shall not include the following in total costs for progress payment purposes in subparagraph (a)(1)(i) above:

(i) Costs that are not reasonable, allocable to this contract, and consistent with sound and generally accepted accounting principles and

practices.

(ii) Costs incurred by subcontractors or suppliers.

(iii) Costs ordinarily capitalized and subject to depreciation or amortization except for the properly depreciated or amortized portion of such costs.

(iv) Payments made or amounts payable to subcontractors or suppliers, except for-

(A) Completed work, including partial deliveries, to which the Contractor has acquired title; and

(B) Work under cost-reimbursement or time-and-material subcontracts to which the Contractor has acquired title.

(4) The amount of unliquidated progress payments may exceed neither (i) the progress payments made against incomplete work (including allowable unliquidated progress payments to subcontractors) nor (ii) the value, for progress payment purposes, of the incomplete work. Incomplete work shall be considered to be the supplies and services required by this contract, for which delivery and invoicing by the Contractor and acceptance by the Government are incomplete.

(5) The total amount of progress payments shall not exceed 80 percent of the total contract price.

(6) If a progress payment or the unliquidated progress payments exceed the amounts permitted by subparagraphs (a)(4) or (a)(5) above, the Contractor shall repay the amount of such excess to the Government on demand.

(b) Liquidation. Except as provided in the Termination for Convenience of the Government clause, all progress payments shall be liquidated by deducting from any payment under this contract, other than advance or progress payments, the unliquidated progress payments, or 80 percent of the amount invoiced, whichever is less. The Contractor shall repay to the Government any amounts required by a retroactive price reduction, after computing liquidations and payments on past invoices at the reduced prices and adjusting the unliquidated progress payments accordingly. The Government reserves the right to unilaterally change from the ordinary liquidation rate to an alternate rate when deemed appropriate for proper contract financing.

(c) Reduction or suspension. The Contracting Officer may reduce or suspend progress payments, increase the rate of liquidation, or take a combination of these actions, after finding on substantial evidence any of the following conditions:

(1) The Contractor failed to comply with any material requirement of this contract (which includes paragraphs (f) and (g) below).

(2) Performance of this contract is endangered by the Contractor's (i) failure to make progress or (ii) unsatisfactory financial condition.

(3) Inventory allocated to this contract substantially exceeds

reasonable requirements.

(4) The Contractor is delinquent in payment of the costs of performing this contract in the ordinary course of business.

(5) The unliquidated progress payments exceed the fair value of the work accomplished on the undelivered portion of this contract.

(6) The Contractor is realizing less profit than that reflected in the establishment of any alternate liquidation rate in paragraph (b) above, and that rate is less than the progress payment rate stated in subparagraph (a)(1) above.

(d) Title. (1) Title to the property described in this paragraph (d) shall vest in the Government. Vestiture shall be immediately upon the date of this contract, for property acquired or produced before that date. Otherwise, vestiture shall occur when the property is or should have been allocable or properly chargeable to this contract.

(2) "Property," as used in this clause, includes all of the below-described items acquired or produced by the Contractor that are or should be allocable or properly chargeable to this contract under sound and generally accepted accounting principles and practices.

(i) Parts, materials, inventories, and work in process;

(ii) Special tooling and special test equipment to which the Government is to acquire title under any other clause of this contract;

(iii) Nondurable (i.e., noncapital) tools, jigs, dies, fixtures, molds, patterns, taps, gauges, test equipment, and other similar manufacturing aids, title to which would not be obtained as special tooling under subparagraph (ii) above; and

(iv) Drawings and technical data, to the extent the Contractor or subcontractors are required to deliver them to the Government by other clauses of this contract.

(3) Although title to property is in the Government under this clause, other applicable clauses of this contract; e.g., the termination or special tooling clauses, shall determine the handling and disposition of the property.

(4) The Contractor may sell any scrap resulting from production under this contract without requesting the Contracting Officer's approval, but the proceeds shall be credited against the costs of performance.

(5) To acquire for its own use or dispose of property to which title is vested in the Government under this clause, the Contractor must obtain the Contracting Officer's advance approval of the action and the terms. The Contractor shall (i) exclude the allocable costs of the property from the costs of contract performance, and (ii) repay to the Government any amount of unliquidated progress payments allocable to the property. Repayment may be by cash or credit memorandum.

(6) When the Contractor completes all of the obligations under this contract, including liquidation of all progress payments, title shall

vest in the Contractor for all property (or the proceeds thereof) not--

(i) Delivered to, and accepted by, the Government under this contract; or

(ii) Incorporated in supplies delivered to, and accepted by, the Government under this contract and to which title is vested in the Government under this clause.

(7) The terms of this contract concerning liability for Government-furnished property shall not apply to property to which the Government acquired title solely under this clause.

(e) Risk of loss. Before delivery to and acceptance by the Government, the Contractor shall bear the risk of loss for property, the title to which vests in the Government under this clause, except to the extent the Government expressly assumes the risk. The Contractor shall repay the Government an amount equal to the unliquidated progress payments that are based on costs allocable to property that is damaged, lost, stolen, or destroyed.

(f) Control of costs and property. The Contractor shall maintain an accounting system and controls adequate for the proper administration of this clause.

(g) Reports and access to records. The Contractor shall promptly furnish reports, certificates, financial statements, and other pertinent information reasonably requested by the Contracting Officer for the administration of this clause. Also, the Contractor shall give the Government reasonable opportunity to examine and verify the Contractor's books, records, and accounts.

(h) Special terms regarding default. If this contract is terminated under the Default clause, (i) the Contractor shall, on demand, repay to the Government the amount of unliquidated progress payments and (ii) title shall vest in the Contractor, on full liquidation of progress payments, for all property for which the Government elects not to require delivery under the Default clause. The Government shall be liable for no payment except as provided by the Default clause.

(i) Reservations of rights. (1) No payment or vesting of title under this clause shall (i) excuse the Contractor from performance of obligations under this contract or (ii) constitute a waiver of any of the rights or remedies of the parties under the contract.

(2) The Government's rights and remedies under this clause (i) shall not be exclusive but rather shall be in addition to any other rights and remedies provided by law or this contract and (ii) shall not be affected by delayed, partial, or omitted exercise of any right, remedy, power, or privilege, nor shall such exercise or any single exercise preclude or impair any further exercise under this clause or the exercise of any other right, power, or privilege of the Government.

(j) Progress payments to subcontractors. The amounts mentioned in

(a)(1)(ii) above shall be all progress payments to subcontractors or divisions, if the following conditions are met:

(1) The amounts included are limited to (i) the unliquidated remainder of progress payments made plus (ii) for small business concerns any unpaid subcontractor requests for progress payments that the Contractor has approved for current payment in the ordinary course of business.

(2) The subcontract or interdivisional order is expected to involve a minimum of approximately 6 months between the beginning of work and the first delivery, or, if the subcontractor is a small business concern, 4 months.

(3) The terms of the subcontract or interdivisional order concerning progress payments--

(i) Are substantially similar to the terms of the clause at 52.232-16, Progress Payments, for any subcontractor that is a large business concern, or that clause with its Alternate I for any subcontractor that is a small business concern;

(ii) Are at least as favorable to the Government as the terms of this clause;

(iii) Are not more favorable to the subcontractor or division than the terms of this clause are to the Contractor;

(iv) Are in conformance with the requirements of paragraph 32.504(e) of the Federal Acquisition Regulation; and

(v) Subordinate all subcontractor rights concerning property to which the Government has title under the subcontract to the Government's right to require delivery of the property to the Government if (A) the Contractor defaults or (B) the subcontractor becomes bankrupt or insolvent.

(4) The progress payment rate in the subcontract is the customary rate used by the Contracting Agency, depending on whether the subcontractor is or is not a small business concern.

(5) The parties agree concerning any proceeds received by the Government for property to which title has vested in the Government under the subcontract terms, that the proceeds shall be applied to reducing any unliquidated progress payments by the Government to the Contractor under this contract.

(6) If no unliquidated progress payments to the Contractor remain, but there are unliquidated progress payments that the Contractor has made to any subcontractor, the Contractor shall be subrogated to all the rights the Government obtained through the terms required by this clause to be in any subcontract, as if all such rights had been assigned and transferred to the Contractor.

(7) The Contractor shall pay the subcontractor's progress payment request under subdivision (j)(1)(ii) above, within a reasonable time after receiving the Government progress payment covering those amounts.

(8) To facilitate small business participation in subcontracting under this contract, the Contractor agrees to provide progress payments to small business concerns, in conformity with the standards for customary progress payments stated in Subpart 32.5 of the Federal Acquisition Regulation. The Contractor further agrees that the need for such progress payments shall not be considered as a handicap or adverse factor in the award of subcontracts.

(k) Limitations on Undefinitized Contract Actions. Notwithstanding any other progress payment provisions in this contract, progress payments may not exceed 80 percent of costs incurred on work accomplished under undefinitized contract actions. A "contract action" is any action resulting in a contract, as defined in Subpart 2.1, including contract modifications for additional supplies or services, but not including contract modifications that are within the scope and under the terms of the contract, such as contract modifications issued pursuant to the Changes clause, or funding and other administrative changes. This limitation shall apply to the costs incurred, as computed in accordance with paragraph (a) of this clause, and shall remain in effect until the contract action is definitized. Costs incurred which are subject to this limitation shall be segregated on Contractor progress payment requests and invoices from those costs eligible for higher progress payments rates. For purposes of progress payment liquidation, as described in paragraph (b) of this clause, progress payments for undefinitized contract actions shall be liquidated at 80 percent of the amount invoiced for work performed under the undefinitized contract action as long as the contract action remains undefinitized. The amount of unliquidated progress payments for undefinitized contract actions shall not exceed 80 percent of the maximum liability of the Government under the undefinitized contract action or such lower limit specified elsewhere in the contract. Separate limits may be specified for separate actions.

(End of clause)

I.119 52.233-7000 CERTIFICATION OF CLAIMS AND REQUESTS FOR ADJUSTMENT OR RELIEF (APR 1993)

(a) Any contract claim, request for equitable adjustment to contract terms, request for relief under Pub. L. 85-804, or other similar request exceeding $100,000 shall bear, at the time of submission, the following certificate given by an individual who has knowledge of the basis of the claim or request, knowledge of the accuracy and completeness of the supporting data, and knowledge of the claim or request:

> I certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of my knowledge and belief; and that the amount requested accurately reflects the contract adjustment for which the Contractor