IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE AMERICAN INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 99-721c<br>(Judge Francis A. Allegra) |

**PLAINTIFF'S RESPONSE BRIEF TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

## BACKGROUND

G&C Enterprises entered into a contract with the government to build an apron and a jet-fuel storage facility at McGuire Air Force Base, for $10,380,390.[1] American Insurance Company (Surety) issued a Miller Act payment and performance bond of behalf of G&C, its principal, in favor of the government, as obligee, in connection with the contract.[2]

***The Surety undertook completion of the construction contract:***

G&C performed the contract without incident until near the end of the project, when G&C experienced financial problems and failed in its contractual obligations.[3] With approximately $300,000 left in contract balances (about 3% of the contract amount), the Surety took over completion of the contract, in accordance with its performance-bond obligations.[4] It entered into a "Subcontractor/Takeover Agreement" with contractor C&T Associates, in which

[1] See government's proposed finding of fact (PFF) 1 and the Surety's response thereto; affidavit of David Rost, Esquire, house counsel for G&C during this project, at Exhibit 1, ¶ 2; and affidavit of John Stos of Cashin Associates at Exhibit 2, ¶ 2.

[2] See PFF and response at 2; Surety's complaint; Exhibit 2 at ¶ 3.

[3] See PFF and response at 3; Declaration of contracting officer John Simms attached at ¶¶ 4-5; Exhibit 2 at ¶¶ 2, 3, & 7.

[4] See PFF and response at 3, 6, & 8; Exhibit 1 at ¶ 3-6.

C&T was to complete the construction work for approximately $2.7 million.[5] The Surety also hired Cashin Associates as project manager.[6] G&C was to "remain the named Contractor solely for administrative purposes with the Obligee."[7]

***The Surety's claim against the government for overpayment:***

The Surety's claim in this case charges that the government's overpayment to G&C by over $800,000 increased the cost of the Surety's performance under the bond.[8] The government's project manager has admitted that G&C was overpaid for its work on the contract, though his overpayment figure was slightly lower, approximately $700,000.[9]

***The government's motion for summary judgment:***

Before the Court is the government's motion for summary judgment, in which it argues that it owed no duty to the surety to protect contract balances by making sure that it paid G&C only for work that was actually done "[b]ecause American did not inform the Government that G&C was in default at the time of the contested progress payments or ever request that progress payments be made to anybody but G&C ...."[10] The government's motion does not dispute that it overpaid G&C; it argues only that it was entitled to overpay G&C, absent formal notice of the contractor's default by the surety.

***The Surety's response in opposition:***

It is a basic principle of surety law that a surety may pursue an affirmative claim against an obligee who impairs its suretyship status by overpaying the principal, thereby increasing the

---

[5] A copy of the Surety's "Subcontract/Completion Agreement" with C&T associates is attached to this brief at Exhibit 3.

[6] See Stos Affidavit at Exhibit 2, ¶¶ 1, 3.

[7] See C&T takeover agreement at Exhibit 3, Article 1.1.

[8] See the surety's complaint at ¶ 18; see also Exhibit 4, letter from John Stos to contracting officer Simms dated March 24, 1999, enclosing copy of overpayment analysis.

[9] See Rost affidavit at Exhibit 1, ¶ 7(discussing meeting with the government's project manager, Captain Paul Novello); Stos affidavit at Exhibit 2, ¶ 9 (same); letter from John Stos to Captain Greg Bennett, Esquire, dated December 31, 1997, at Exhibit 7 (referencing government's admission).

[10] See defendant's brief supporting motion for summary judgment at 3.

surety's cost of performance under the bond.[11] Where the government has constructive notice of the contractor's failure to meet its contractual obligations, the law "does not impose a further requirement that the surety notify the government that 'the principal has defaulted.'"[12]

The government in this case knew that G&C was in financial difficulty and was not meeting its contractual obligations, that the Surety had contracted with C&T Associates to take over the completion of the project, and that G&C remained the contractor in name only.[13] Because it had constructive notice of G&C's failure to meet its contractual obligations, and knew that the remaining contract funds were paid to completion contractor C&T, not G&C, the government had a duty to protect the contract funds in this case.

## LEGAL STANDARD

Rule 56(c) provides that a party seeking summary judgment bears the burden of proving that there are no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law.[14] An issue of fact is genuine if a reasonable jury [trier of fact] could return a verdict for the nonmoving party, who is entitled to every reasonable inference of fact from the evidence presented.[15] In the present case, if a reasonable trier of fact could find that the government breached its duty to protect the contract balance by overpaying G&C, and that the government's overpayment increased the Surety's cost of performance under its bond, then the government's motion for summary judgment must fail.

---

[11] *See, e.g.*, Prairie State Nat. Bank v. United States, 164 U.S. 227 (1986); Transamerica Premier Ins. Co. v. United States, 32 Fed.Cl. 308, 312 (Fed. Claims 1994); National Surety Corp. v. United States, 118 F.3d 1542 (Fed.Cir. 1997); International Fid. Ins. Co. v. United States, 41 Fed.Cl. 706 (1998); U.S. Fid. & Guar. Co. v. United States, 475 F.2d 1377, 1384 (Ct.Cl. 1973).

[12] National Surety, *supra*, 118 F.3d at 1547.

[13] See Declaration of contracting officer John Simms attached to the government's motion for summary judgment at ¶¶ 4, 5; Rost affidavit at Exhibit 1, ¶ 6; Stos affidavit at Exhibit 2, ¶ 5. *See also* Exhibits 5 and 6, Status Inquiries of Surety dated July, 1996 and April, 1997, in which the government's contract specialist noted, *inter alia*, "Inadequate work force to perform remainder of contract. Very little (minimal) work complete each week.... Numerous calls/complaints/letters from subcontractors and suppliers indicating non payment for supplies and services." Id.

[14] F.R.C.P. 56(c).

[15] International Fid. Ins. Co. v. United States, 41 Fed.Cl. 706 (1998), citing F.R.C.P. 56(c).

## ARGUMENT

Under suretyship law, contract funds in the hands of the obligee are viewed as security or "collateral" to which the surety can turn to cover the cost of completion if the principal defaults on the underlying obligation.[16] Consistent with its own business needs, the government has a duty, as holder of the contract funds, to use "reasonable care in the custody and preservation of collateral in its possession," and "to consider the surety's interest in conjunction with other problems encountered in the administration of the contract."[17]

***An obligee who impairs collateral by improperly releasing contract funds is liable to the performing surety.***

When the government overpays the contractor by prematurely releasing retained contract funds, the surety is harmed because its access to remaining contract balances to cover its completion costs is reduced.[18] If the government's prepayment/overpayment to the contractor causes the surety pecuniary disadvantage, or otherwise deprives it of some protection reserved in the bond, then the government is liable to the surety for its increased completion costs.[19]

***The Surety in this case has a lawful claim against the government for overpayment.***

In the case before the Court, American contends that the government impaired the collateral in its possession by overpaying G&C more than $800,000 of the contract funds for work that was not done, and that this overpayment increased the Surety's cost of performance under its bond.[20] The government has admitted that it overpaid G&C, though its figure was closer to $700,000.[21] Giving the Surety every reasonable inference, a trier of fact could find that the government breached its duty to protect the contract funds by paying G&C only for work that

---

[16] *See, e.g.*, Prairie State Nat. Bank v. United States, 164 U.S. 227 (1986); Transamerica Premier Ins. Co. v. United States, 32 Fed.Cl. 308, 312 (Fed. Claims 1994); National Surety, *supra*; International Fidelity, *supra*; U.S. Fid. & Guar. Co. v. United States, 475 F.2d 1377, 1384 (Cl.Ct. 1973).

[17] Transamerica Premier, *supra*, 32 Fed.Cl. at 312.

[18] *See, e.g.*, Prairie State, *supra* (obligee's overpayment constitutes release of security which impairs surety's right of subrogation to those funds); Transamerica Premier, *supra* (same).

[19] Id. *See also* Transamerica Ins. Co. v. City of Kennewick, 785 F.2d 660, 662 (9th Cir. 1986); National Surety, supra, 118 F.3d at 1548.

[20] See the Surety's complaint.

[21] See Rost affidavit at Exhibit 1, ¶ 7; Stos affidavit at Exhibit 2, ¶ 9; Exhibit 7.

was done. The Court should therefore deny the government's motion for summary judgment.

***Since it knew about G&C's failure to meet contractual obligations, the government cannot disclaim its duty to protect contract funds because of alleged lack of notice of default.***

The government attempts to argue that it owed no duty to protect the contract balances "[b]ecause American did not inform the Government that G&C was in default at the time of the contested progress payments or ever request that progress payments be made to anybody but G&C."[22] For this proposition, the government cites *Fireman's Fund Ins. Co. v. United States*,[23] in which the Court stated that "the government as obligee owes no equitable duty to a surety like Fireman's Fund unless the surety notifies the government that the principal has defaulted under the bond."[24]

As the Circuit Court of Appeals later held in *National Surety*, however, *Fireman's Fund* is inapplicable where the government was otherwise aware of the contractor's failure to perform its contractual obligations:

> When the contractor abandoned performance before completion, as did [the contractor here], and the government had knowledge of the default, as here, and so informed the surety, as here, *Fireman's Fund* does not impose a further requirement that the surety notify the government that "the principal has defaulted."[25]

The Federal Claims Court reiterated this holding in *International Fid. Ins. Co. v. United States*.[26] In that case, the government admitted that the contracting officer "had notice of the problems with the contractor's performance and unpaid suppliers," but argued that constructive notice was insufficient to perfect a stakeholder's duty to a surety, citing *Fireman's Fund*.[27] The *International Fidelity* Court rejected the government's argument, holding that constructive notice of a contractor's problems gives rise to the government's duty to protect the contract

---

[22] See defendant's brief supporting its motion for summary judgment at 3.

[23] 909 F.2d 495 (Fed. Cir. 1990).

[24] Id. at 498.

[25] National Surety, *supra*, 118 F.3d at 1547.

[26] 41 Fed.Cl. 706 (1998).

[27] Id.

funds.[28] (The Court further held that the government breached its stakeholder duties as a matter of law, and granted the surety's motion for summary judgment.)[29]

As in *National Surety* and *International Fidelity*, the government in the present case knew that G&C was experiencing financial problems and failing to meet its contractual obligations.[30] The government further admitted that it overpaid G&C (by $700,000).[31] Since the government was well aware of G&C's contractual failings, *Fireman's Fund* "does not impose a further requirement that the surety notify the government that 'the principal has defaulted.'"[32]

The government also knew that the Surety hired C&T to finish the project, and that G&C remained the contractor in name only.[33] Its argument that the surety did not "request that progress payments be made to anybody but G&C" is therefore misleading, since G&C was not paid the remaining contract funds.[34] G&C's status as nominal contractor at the end of the project thus has no bearing on whether the government owed the Surety a duty to protect contract funds in this case.

---

[28] Id.; *see also* Transamerica Premier, *supra*, 32 Fed.Cl. at 313 (government's duty to protect contract balances also arises when it has reasonable warning of a contractor's threatened default under the bond).

[29] Id.

[30] See PFF and Surety response at 3; Declaration of contracting officer Simms attached to the government's motion for summary judgment at ¶¶ 4, 5. See also Exhibits 1, 2, 4, 5, 6, & 7.

[31] See Rost affidavit at Exhibit 1, ¶ 7; Stos affidavit at Exhibit 2, ¶ 9; Exhibit 7.

[32] National Surety, *supra*, 118 F.3d at 1546-48; Transamerica Premier, *supra*, 32 Fed.Cl. at 313 (holding the "defendant [government] reads too much into the *Fireman's Fund* opinion").

[33] See Declaration of contracting officer John Simms attached to the government's motion for summary judgment at ¶ 5 ("It was agreed upon and understood by both parties that progress payments would be made to G&C Enterprises, Inc. and then in turn payments would be made to the completion contractor, with the approval of Cashin Associates ...."). See also Exhibits 1, 2 and 3.

[34] See Simms Declaration, and Exhibits 1 and 2.

***The government's attempt to distinguish* National Surety *fails.***

In *National Surety Corp v. United States*,[35] the government failed to withhold a ten-percent retainage as required by the contract. The primary contractor had abandoned the project, and the surety completed the construction in accordance with the performance bond. The surety filed a claim for the retainage funds that had been wrongly discharged by the government to the primary contractor. The United States Court of Appeals for the Federal Circuit determined that the government had breached its duty to protect the contract balances by improperly releasing the retainage, and that it was therefore liable to the surety on its claim.[36]

The government in the instant case argues that *National Surety* does not apply because "the contract here does not limit the government's flexibility in making contract payments," in purported contrast to *National Surety*.[37] The parties' contract in the instant case did contain a provision, however, that explicitly based payments to G&C on work actually performed:

> The government shall make progress payments ... on estimates of work accomplished which meets the standards of quality established under the contract, as approved by the contracting officer. The contractor shall furnish a breakdown of the total contract price showing the amount included therein for each principal category of the work, which shall substantiate the payment amount requested ....[38]

This provision of the parties' construction contract– unmentioned in the defendant's brief– required the government to pay G&C only for work that was actually performed. The defendant's suggestion that it owed no duty to protect the contract funds because it had the "flexibility" to pay G&C for work that had not been done thus has no basis in the law or the facts of this case.

In *National Surety*, the government had a duty not to release retainage until the contractor performed all of the work. In the present case, the government had a contractual duty not to approve progress payments until it determined that the work had been performed. As in *National Surety*, therefore, the government in this case had a duty to protect the collateral by making sure that contract funds were not prematurely released.

---

[35] 118 F.3d 1542 (Fed.Cir. 1997).

[36] Id. at 1546-48.

[37] See defendant's brief supporting its motion for summary judgment at 6.

[38] See FAR reg. 52.232-0005, incorporated into the contract between G&C and the government, attached to defendant's brief at App. 6.

***Summary: the government had a duty to protect contract funds in this case, and there exists a genuine issue regarding whether the government breached that duty by overpaying G&C.***

The government's motion does not contend that it did not overpay G&C– only that it was entitled to overpay G&C absent contractual duty or formal notice by the surety of the contractor's default. As set forth above, the construction contract required the government to pay G&C only for work that was done, and the government had constructive notice of G&C's failure to meet contractual obligations.

Despite its contention to the contrary, therefore, the government owed a duty to protect the contract funds by only paying G&C for work that was actually done.[39] Because a reasonable trier of fact could determine that the government's improper release of contract funds increased the cost of the Surety's performance under the bond, the government's motion for summary judgment must fail.

**CONCLUSION**

For all of these reasons, plaintiff American Insurance Company respectfully requests that the Court deny the defendant government's motion for summary judgment.

Respectfully submitted,

**HARRY R. BLACKBURN & ASSOCIATES**

Dated: January 22, 2003 By: ____________________________

PAUL T. DeVLIEGER, ESQUIRE
DEREK EDDY, ESQUIRE
Attorneys for Plaintiff, American Ins. Co.
1528 Walnut Street
Philadelphia, PA 19103
(215) 985-0123

Q:\Firemans.294\McG-APRON.041\PLD\response to msj.wpd

[39] National Surety, *supra*.