# EXHIBIT 1

**BEFORE THE**
**COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| APPEAL OF G&C ENTERPRISES, INC.<br><br>UNDER CONTRACT NO.<br>DAHA28-94-C-0002 | DOCKET NO. 99-721C<br>(Judge Allegra)<br><br>**AFFIDAVIT OF**<br>**David L. Rost, Esq.** |

I, David L. Rost, being duly sworn under law, hereby swear that:

1. I was G&C Enterprises, Inc.'s retained house counsel at all times relevant to this case.

2. G&C was awarded Contract No. DAHA28-94-C-0002, on February 18, 1994, in the lump sum amount of $10,380,390.00, for the construction of an Aircraft Parking Apron and Jet Fuel Facility at McGuire AFB, New Jersey ("the Apron Contract").

3. In August 1996, at the request of G&C Enterprises, Inc., its surety, The American Insurance Company, evaluated G&C's five uncompleted contracts, including the Apron Contract, for the purpose of fulfilling its obligations under the various performance and payment bonds.

4. In November 1996, the surety established five separate checking accounts in G&C's name, one for each of the uncompleted contracts, including the Apron Contract, with First Union Bank. These checking accounts were established to be the operating accounts for each contract, with the contract proceeds deposited therein, contract expenses drawn therefrom, and additional funds as required deposited therein by the surety. The authorized signers on these accounts were the surety, the surety counsel, and the surety consultant. No employee, officer or representative of G&C Enterprises, Inc. had signature authority on these accounts.

5. In consideration for the surety's actions to complete its uncompleted contracts, G&C Enterprises, Inc. executed a technical default of its bonds, and accepted liability for the surety's costs under the General Indemnification Agreement signed by G&C and the surety as a condition precedent to receiving its bonds.

6. At all times subsequent to November 1996, all contract proceeds from Contract No. DAHA28-94-C-0002 were deposited in a bank account owned and controlled by the surety, and all expenses incurred to complete the contract were provided by The American Insurance Company or contract proceeds. Checks from said account were issued only by surety personnel or its attorney and consultant, and no funds or proceeds from this account or any other contract proceeds were paid to G&C Enterprises, Inc. for other than deposit in its payroll account.

7. During the period between August 1996 and April 1997, I had occasion to attend a meeting with Mr. John Stos, surety consultant, and with the Government's project manager, then Captain Paul Novello, who confirmed that the Government had overpaid G&C Enterprises, Inc., but that in his opinion the overpayment was $700,000, not $800,000.

(Notary seal)

David L. Kost

Sworn to and subscribed before

me this 21st day of January, 2004

Notary Public

LINDA F. MICELOTTA
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES MARCH 21, 2005