# EXHIBIT 2

**BEFORE THE**
**COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| APPEAL OF G&C ENTERPRISES, INC.<br><br>UNDER CONTRACT NO.<br>DAHA28-94-C-0002 | DOCKET NO. 99-721C<br>(Judge Allegra)<br><br>**AFFIDAVIT OF**<br>**JOHN STOS** |

I, John Stos, being duly sworn under law, hereby swear that:

1. I was employed by Cashin Associates, surety consultant to American Insurance Co., G&C's surety, at all times relevant to this case.

2. G&C was awarded Contract No. DAHA28-94-C-0002, on February 18, 1994, in the lump sum amount of $10,380,390.00, for the construction of an Aircraft Parking Apron and Jet Fuel Facility at McGuire AFB, New Jersey (the Apron Contract).

3. In August 1996, at the request of The American Insurance Company, I evaluated this contract to assess the contract performance to date, cost to complete, and contract balances for the surety to determine how to fulfill its bond obligations. The contract balance was approximately $300,000.

4. In November 1996, the surety established five separate checking accounts in G&C's name, one for each of G&C's uncompleted contracts, including the Apron Contract, with First Union Bank. These checking accounts were established to be the operating accounts for each contract, with the contract proceeds deposited therein, contract expenses drawn therefrom, and additional funds as required deposited therein by the surety. Authorized signers on these accounts were the surety, the surety counsel, and the surety consultant.

5. At all times subsequent to November 1996, all contract proceeds from Contract No. DAHA28-94-C-0002 were deposited in a bank account owned and controlled by the surety, and all expenses incurred to complete the contract were provided by The American Insurance Company or contract proceeds. No funds or proceeds from this account or any other contract proceeds were paid to G&C Enterprises, Inc. for other than deposit in its payroll account.

6. In April 1997, as consultant for the surety, upon its takeover of G&C Enterprises, Inc. active contracts, I personally walked the construction site and assessed the work in process and the contract requirements as to the percent complete and scope of work remaining for purposes of preparation of a solicitation for a completion subcontract.

7. As of April 1997, the Government paid G&C Enterprises, Inc. the amount of $10,272,436, or 96.22% of the contract value. My assessment of work actually completed was 83.95%, or $9,451,034. By my analysis, the Government overpaid G&C Enterprises, Inc. $821,401.00.

8. In response to the statement of work I prepared, a completion subcontract was issued to C&T Associates, 1000 Hagey Road, Souderton, PA 18964 on July 31, 1997 in the lump sum amount of $2,740,000.00. The completion subcontract amount included $747,412.00 for excess soil removal, which was not included in the contract scope of work, therefore, the actual cost to complete the work was $1,992,588.

9. During this time, I had occasion to speak with the Government's project manager, then Captain Paul Novello, who confirmed that the Government had overpaid G&C Enterprises, Inc., but that in his opinion the overpayment was $700,000, not $800,000.

JOHN STOS

**Sworn to and Subscribed before me this 20th day of January, 2004**

DEREK EDDY, ESQUIRE
State of New Jersey Attorney