# EXHIBIT 3

# SUBCONTRACT/COMPLETION AGREEMENT

AGREEMENT made this 31ST day of July, 1997, by and between FIREMAN'S FUND INSURANCE COMPANY, acting by and through its authorized agent, The American Insurance Company ("Surety"), a Nebraska corporation with a usual place of business in Novato, California, and C&T ASSOCIATES, INC. ("C&T", or alternatively "Completion Contractor"), a New Jersey corporation with a usual place of business in Souderton, Pennsylvania.

## ARTICLE I

## RELATIONSHIP OF THE PARTIES

1.1 **Relationships.** G&C Enterprises, Inc. ("G&C", or alternatively "Principal") entered into Contract No. DAHA28-94-C-0002 entitled Construct Aircraft Parking Apron and Jet Fuel Storage Facility, McGuire Air Force Base ("Project"). As required by the Contract and at the request of Principal, the Surety issued Performance and Payment Bonds under the Miller Act (40 U.S.C. 270, *et seq.*) naming G&C as the Principal and the United States of America as Obligee. On or about February, 1997, G&C tendered, and the Surety accepted, a letter of voluntary default. As of the date of G&C's default, work remained to be performed under the Contract and G&C continued to perform this work with the assistance of the Surety. In that regard, the Surety has provided certain management assistance and has paid Payment Bond claims of material suppliers and/or subcontractors. In most instances, the Surety has accepted a novation and a covenant from subcontractors or suppliers who were the claimants to continue to perform and or supply materials. Moreover, the Surety has obtained an assignment from the Principal.

The Surety presently does not desire to enter into a takeover agreement with the Obligee; and, therefore, in order to complete the Project and satisfy its bond obligation, has determined to enter into this Agreement, pursuant to which C&T shall be engaged to complete the remaining Contract work, as defined on Exhibit "A" hereto. G&C shall remain the named Contractor solely for administrative purposes with the Obligee unless formally defaulted by the Obligee or otherwise instructed by the Surety. The Surety shall ensure payments and shall be solely liable therefor to C&T for the completion of the work under the terms and conditions set forth herein. G&C shall assist and cooperate with C&T as and when requested but shall have no rights and powers with regard to the work to be performed by C&T hereunder. The Surety shall also appoint Cashin Associates as its authorized representative to perform much of the Surety's administrative functions in connection with implementing this Agreement.

## ARTICLE II

## THE CONTRACT DOCUMENTS AND INCORPORATION OF THE CONTRACT

2.1 **Contract Documents and Interpretation**. The Contract Documents consist of this Agreement, Exhibits "A" and "B" hereto, Contract DAHA28-94-C-0002, Construct Aircraft Parking Apron and Jet Fuel Storage Facility, McGuire Air Force Base, New Jersey; Solicitation, Offer and Award; Bid Schedule; Project Description; Contract Clauses; Wage Determination; Specifications (1) New Jersey Air National Guard, Jet Fuel Operating Storage and Distribution System and KC-135 Aircraft Parking Apron, Administrative Instructions, (2) New Jersey Air National Guard, Jet Fuel Operating Storage and Distribution System, Technical Specifications:

Volumes I, II, III and IV, prepared by Lewis Berger & Associates, Inc., October, 1993, (3) New Jersey Air National Guard, KC-135 Aircraft Parking Apron Technical Specifications: Volumes I and II, prepared by Lewis Berger & Associates, Inc., October, 1993; Contract Drawings (Parking Apron), Sheet Nos. T1, C1 through C19, D1, D2, M1 - M4, U1, S1, E1 - E7, A1, A2; Contract Drawings (Jet Fuel Storage), Sheet Nos. T1, T2, C1 through C10, U1, U2, A1 - A12, A14 - A20, S1 - S12, M1 - M18, E1 - E15, P1 - P4, D1, and all modifications, specifically Volume 4 dated January 20, 1997 and prepared by the Surety's representative, issued as of the date of this Agreement; provided, however, that if and to the extent there is any inconsistency between this Agreement, including Exhibit "A: hereto, and any of the other Contract documents, this Agreement shall prevail and shall govern the relationship between the Surety and C&T.

2.2 Subject to the terms and conditions of this Agreement, it is the intention of the Surety to bind C&T to the Surety to the same extent that G&C is bound to the Government.

2.3 This Agreement, including Exhibit "A" hereto, represents the entire and integrated agreement between the Surety and C&T and supersedes prior negotiations, representations or agreements, either written or oral. Any Federal Acquisition Regulation, state or Federal statute which may be applicable to the Contract, although not necessarily expressed herein, is incorporated herein by this reference.

## ARTICLE III

## THE REMAINING WORK TO BE PERFORMED

3.1 **Remaining Work**. C&T shall perform, furnish and pay for all testing, labor, materials, equipment costs of any nature, quality control, insurances, subcontractors and suppliers

and do all other things necessary, to complete the remaining physical work, as defined on Exhibit "A" hereto, which Exhibit is an integral part hereof, and all related obligations under the Contract, promptly and in a first-class manner, in strict compliance with the Contract Documents.

3.2 C&T acknowledges that it has reviewed the Contract Documents and has performed a careful and competent visual field inspection, and, therefore, is familiar with the work remaining on the Project. The Surety agrees that the work defined on Exhibit "A" hereto represents all of the work remaining to be completed as of the date of this Agreement as could be determined by careful and competent visual field inspection.

3.3 C&T shall provide all warranties, expressed or implied, for its performance of the work under this Agreement. The Surety agrees that C&T shall not be responsible for any workmanship errors or deficiencies caused by G&C's performance, except as may be expressly stated herein.

## ARTICLE IV

## SCHEDULE FOR COMPLETION OF REMAINING WORK

4.1 **Schedule**. C&T agrees to commence work at the Project site within five (5) calendar days of receipt of a Notice to Proceed, and to substantially complete the remaining work , as defined on Exhibit "A", on or before December 31, 1997, with final completion to be achieved on or before May 31, 1998 (the "Project Schedule"); provided, however, that C&T shall be afforded extensions of time or other relief based upon excusable delays arising after execution of this Agreement caused by the Obligee, in which case the Surety through G&C shall sponsor a request for time extension, in accordance with C&T's request to the Surety for a time extension.

885

~~Surety for a time extension.~~ Time is of the essence. However, to the extent that C&T is caused to suffer any delay(s) due to any "Latent Defect," as defined in Article VIII of this Agreement, or the Surety is responsible for any delays, C&T shall be granted a time extension by the Surety.

## ARTICLE V

## THE CONTRACT SUM

5.1 Contract Price. In consideration of C&T's full and faithful performance and completion of the remaining Contract work as defined on Exhibit "A" hereto, and discharging its duties as set forth in this Agreement, the Surety shall pay C&T the Contract sum of $2,740,000.00,[1] pursuant to the procedure described in Article VI of this Agreement, and subject to adjustments of the Contract Price as may be agreed to by modification, change order or as is otherwise provided for by the Contract Documents.

5.2 C&T agrees to accept the Contract Sum, as may be adjusted hereafter, as full compensation for all testing, labor, materials, equipment, costs of any nature, quality control, cartage, profit and overhead to complete the remaining work, as described on Exhibit "A".

---

[1] The parties acknowledge that the contract sum may be reduced resulting from work progress achieved from date of offer to date of mobilization. This shall be accomplished by written modification.

## ARTICLE VI

## SUBMISSION OF PAY ESTIMATES FOR PROGRESS PAYMENTS AND FINAL PAYMENTS TO THE OBLIGEE

6.1 **Pay Estimates to Obligee Under Contract**. C&T shall cooperate with the Surety and the Surety's representative in connection with preparing remaining pay estimates to be submitted by the Surety, in the name of G&C, to the Government; provided, however, that the Surety shall be solely responsible for all non-administrative aspects and requirements for obtaining payment(s) from the Government.

6.2 **Pay Estimates to Contractor**. C&T shall prepare its Applications/Requisitions for Payment ("Pay Estimates") in conformity with the format required by the Contract Documents, or as may otherwise be agreed between C&T and the Surety's representative, and on the basis of a breakdown of the Contract Price which shall be agreed upon by C&T and the Surety's representative prior to the Surety issuing the Notice to Proceed. Pay Estimates shall be prepared and submitted by C&T on a monthly basis. C&T expressly acknowledges, understands and agrees that in preparing, signing and submitting any and all Pay Estimates, it is representing to the Surety that the work for which each Pay Estimate is submitted for payment has been performed, installed and completed in strict conformity with the requirements of the Contract Documents, and that the Surety is justifiably relying on C&T's representations of such material facts. Should it be determined by the Surety's representative, either independently or on advice of the Government, at any time up to and including the time when final payment is due C&T, that any of the work performed, installed and completed by C&T for which C&T has been paid or for which

C&T has requested final payment is not in strict conformity with the requirements of the Contract Documents, C&T shall promptly act to correct and remedy any such non-conformity, and the Surety shall have the right to withhold from any Pay Estimate, including the Final Pay Estimate, that amount which the Surety's representative determines to be the reasonable cost of fully correcting and remedying such non-conformity or non-conformities. The Surety's payment of any and all Pay Estimates, including the Final Pay Estimate, shall not constitute an acceptance of any work performed and installed by C&T which is subsequently determined by the Surety's representative or the Government not to be in strict conformity with the requirements of the Contract Documents, nor shall any act or event of payment constitute or be asserted by C&T as a waiver by or estoppel against the Surety with regard to any of the Surety's rights to enforce against C&T any and all requirements of the Contract Documents.

6.3 The Surety shall make payment to the order of C&T within ten (10) working days of the Surety's representative's receipt of C&T's Pay Estimate(s), less ten percent (10%) retention. The Surety shall make payment in the full amount of each Pay Estimate; provided, however, that should the Surety's representative determine that any Pay Estimate is incorrect in regard to amount, or that any of the work for which payment is being requested is not in strict conformity with the requirements of the Contract Documents, the Surety's representative shall give written notice to C&T of such circumstances(s) within five (5) working days of receipt of such Pay Estimate in order to allow C&T time and opportunity to correct any such error or deficiency in the work affecting the Pay Estimate. In no event shall the Surety reject any Pay Estimate in full on the basis of an error or work deficiency affecting only part of a Pay Estimate. The Surety expressly acknowledges, understands and agrees that in no event shall any payment

due C&T be subject to any condition that the Surety or G&C first receive(s) any payment due the Surety or G&C from the Government. Retention shall be reduced from ten percent (10%) to two percent (2%) upon achieving substantial completion.[2]

## ARTICLE VII

## SUBCONTRACTORS AND SUPPLIERS

7.1 C&T agrees to use its best, reasonable efforts to utilize G&C's existing subcontractors and suppliers; provided, however, that determinations of whether any such subcontractor/supplier is responsible and able to timely perform in accordance with the requirements of the Contract Documents and at a price that is commensurate with C&T's Contract Price shall be within the sole discretion of C&T. The Surety shall be solely responsible for arranging with G&C and its subcontractors/suppliers for the assignment(s) of any and all subcontracts/agreements, and C&T shall accept only such assignment(s) as it determines, in its sole discretion, to be consistent with its rights and duties under this Agreement. In no event shall C&T be liable for any payment(s) due any subcontractor/supplier of G&C for or on account of any labor, material or equipment already furnished to or on behalf of G&C in connection with the Project. C&T shall be solely responsible for, and solely liable to, make all payments due any and all subcontractors and suppliers which C&T determines to utilize on the Project after the date of this Agreement.

---

[2] For purposes of reduction of retention only, "substantial completion" shall mean at such time as the Government assumes beneficial use of mechanical portion of project.

## ARTICLE VIII

## LIMITATION OF LIABILITY

8.1 Notwithstanding any provision of this Agreement which may be construed to the contrary, C&T shall have no obligations or liabilities with respect to the work, materials and equipment performed and installed on the Project prior to the date of this Agreement, including, but not limited to, warranty obligations and liability for liquidated damages and latent defects, except as is expressly provided in Articles III and IV of this Agreement. In the event that during the course of performing the work described on Exhibit "A" hereto, C&T discovers, or is advised by the Surety's representative or by the Government, that any of the work, materials and/or equipment performed and installed on the Project prior to the date of this Agreement is non-conforming, defective or deficient in any aspect or respect not detected and reasonably detectable by C&T by way of a careful visual field inspection prior to the date of this Agreement ("Latent Defect"), then C&T shall give notice thereof to Surety within three (3) working days of each such discovery or event, and C&T shall not proceed to correct or remedy any such non-conformity, defect or deficiency unless instructed in writing by the Surety's representative to do so; provided, however, that C&T shall not be required and shall have no obligation to proceed to correct or remedy any Latent Defect unless the price to be paid therefor by the Surety is mutually agreed on or the Surety directs C&T to proceed to correct and remedy the Latent Defect on a "Time and Materials" basis, in which event C&T shall keep daily records and accounts of labor, material and equipment expended and used solely in correcting/remedying the Latent Defect and shall invoice the Surety for the actual cost thereof, plus twenty-five percent (25%). The Surety shall have the

right to have any defect or deficiency which C&T deems to be a Latent Defect corrected or remedied by a third person or persons, and C&T shall have no claim against the Surety if the Surety exercises such right, provided that the exercise of such right does not cause C&T to suffer delay and/or interference in the performance of its work. Any and all disputes arising out of and in connection with any Latent Defect, including the issue of whether a Latent Defect does or does not exist, shall be determined in accordance with the "Disputes" provision of this Agreement. In any event, should C&T correct any deficiency at the request of the Surety, C&T shall fully warrant its work; provided that C&T has received written direction from the Surety, including any design direction that may be required to remedy any deficiency.

**ARTICLE IX**

**DISPUTES**

9.1 Any and all controversies, claims and disputes between the Surety and C&T arising out of, in connection with or relating to this Agreement, or the breach thereof, shall be determined in the first instance by the Surety's authorized representative, which determination shall be made and issued in writing within thirty (30) days of the date any such controversy, claim or dispute is submitted to the Surety's representative. In the event either party is not satisfied with that decision, or such decision is not forthcoming within thirty (30) days, it may seek determination by arbitration administered by the American Arbitration Association ("AAA") under its Construction Industry Arbitration Rules then obtaining, and judgment on the award rendered by the arbitrator(s) may be entered in any court(s) of competent jurisdiction. The Surety and C&T agree that before filing any demand for arbitration with the AAA, they shall first endeavor in good faith

to resolve such controversy, claim(s) and dispute(s) by mediation administered by the AAA under its Construction Industry Mediation Rules; provided, however, that if either the Surety or C&T refuses to cooperate in the administration of the mediation so as to prevent the mediation from taking place and being concluded within thirty (30) days of the date demand therefor is served, then the demanding party shall have the right to proceed to arbitration on the thirty-first (31st) day following the date the demand for mediation was served on the other party. In the event that either the Surety or C&T refuses to cooperate in proceeding to arbitration and an action to compel arbitration is initiated to enforce compliance with the agreement to arbitrate, then the party against whom an order is entered compelling such party to proceed to arbitration shall pay to the other party its attorney's fees, costs and expenses incurred in obtaining such order.

## ARTICLE X

## INDEMNITY

10.1 The Surety expressly warrants and agrees that it shall save harmless, defend and indemnify C&T and its officers, directors, shareholders and employees (collectively "C&T") from and against any and all suits, claims, demands, judgments and liabilities, costs, fees and expenses of whatsoever nature and type arising out of or in connection with:

(a) any and all assertions, allegations and contentions made by or on behalf of G&C and/or any Indemnitor(ss) of the Surety that C&T interfered with any contract, subcontract, agreement, right, privilege, duty or defense of G&C and/or any Indemnitor(s) of the Surety;

(b) the joinder of C&T in any litigation brought by the Surety against G&C and/or any Indemnitor(s) of the Surety, or by G&C, and/or any Indemnitor(s), against the Surety;

(c) any and all proceedings commenced by the Surety against the Government, or by the Government against the Surety and/or G&C, the subject matter(s) of which concern(s) any claim, dispute, demand, fact, event, conduct, circumstance, occurrence or non-occurrence prior to the date on which C&T commenced actual performance of the work on the Project under this Agreement; and

(d) any and all claims, statements or representations made by the Surety and/or G&C to the Government prior to the date of this Agreement or in which C&T did not participate, which the Government asserts, alleges or contends to be false or otherwise in violation of any statute, regulation, rule, ordinance or law applicable to the Contract and Project.

10.2 C&T expressly agrees to save harmless, defend and indemnify the Surety and G&C from and against any and all suits, claims, demands, judgments and liability, costs, fees and expenses arising out of or relating to any claim from a subcontractor or supplier of C&T or any claim of C&T relative to this Agreement in which a claim is sponsored to the Obligee by the Surety on behalf of C&T. Claims sponsored by the Surety and G&C to the Obligee originating from C&T shall contain appropriate certification under the Contract Disputes Act.

## ARTICLE XI

## MODIFICATIONS AND AMENDMENTS

11.1 This Agreement may not be modified except in writing duly executed by the Surety and C&T. In the event a Contract Modification is initiated by the Government, C&T shall cooperate with the Surety in connection therewith and this Agreement shall be amended accordingly. In the event it is necessary to issue a unilateral change order based upon

Government initiated modification, the parties shall proceed in a manner consistent with the change, reserving their respective rights provided in this Agreement.

## ARTICLE XII

## SURETY BOND AND INSURANCE

12.1 C&T shall provide standard form subcontractor performance and payment bonds utilized by Hartford Fire Insurance Company, or otherwise acceptable to the Surety, naming the Surety as Obligee in the amount of the Contract Sum and incorporating this Agreement therein.

12.2 C&T shall have and maintain the insurance coverages and limits as set forth in Exhibit "B" hereto. The American Insurance Company, G&C Enterprises, Inc. and Cashin Associates, P.C. shall be named as additional insureds as their interests may appear.

## ARTICLE XIII

## VALIDITY OF AGREEMENT

13.1 Validity. Invalidity of any portion or provision of the Agreement by reason of any applicable laws or for any other reason shall not render any other provisions or portions of the Contract Documents invalid.

## ARTICLE XIV

## NOTICE

14.1 Except as otherwise expressly stated to the contrary herein, all written notices by the parties should be communicated to the following:

TO THE SURETY:

David S. Berry, Esquire
FIREMAN'S FUND INSURANCE COMPANY
Chicago District Surety Claims
233 South Wacker Drive, Suite 2000
Chicago, Illinois 60606-6308

TO C&T:

Steven P. Sherry, President
C&T ASSOCIATES, INC.
1000 Hagey Road
Souderton, Pennsylvania 18964

## ARTICLE XV

## COUNTERPARTS/FACSIMILE SIGNATURES

15.1 This Agreement may be executed in any number of counterparts, each of which when executed and delivered, shall be deemed to be an original with all counterparts constituting but one and the same instrument. The execution of this Agreement by any party hereto will not be effective until counterparts have been executed by all parties. Additionally, facsimile signatures shall bind the undersigned.

THIS AGREEMENT is entered into as of the day and year first written above.

C&T ASSOCIATES, INC.

By: ______________________
Name: STEVEN P. SHERRY
Title: PRESIDENT

DATE: 7/30/97

FIREMAN'S FUND INSURANCE COMPANY

By: ______________________
Name: ______________________
Title: ______________________

DATE: ______________________

**ACKNOWLEDGED BY:**

G&C ENTERPRISES, INC.

By: William C. Gray
Name: WILLIAM C. GRAY
Title: PRESIDENT

DATE: Aug 21, 1997