IN THE UNITED STATES COURT OF FEDERAL CLAIMS

THE AMERICAN INSURANCE COMPANY, )
)
Plaintiff, )
)
v. ) No. 99-721C
) Judge Allegra
THE UNITED STATES, )
)
Defendant. )

DEFENDANT'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Plaintiff, The American Insurance Company ("American"), has filed an opposition to our Motion For Summary Judgment, asserting that, even in the absence of notice from a surety that future contract payments were to be made to it, or otherwise controlling contract provisions, the Government owes a surety an additional duty to protect contract funds under its control. Because the Government breached no legally cognizable duty to American and, in fact, paid all contract funds to the contractor, G & C Enterprises, Inc. ("G & C"), as requested by American, summary judgment should be entered for the Government.

We addressed in our motion for summary judgment each of the four theories advanced in American's complaint as bases for the Government's liability. Although American does not directly state as much, its opposition to our motion appears to be primarily bottomed upon an alleged equitable responsibility of the Government to preserve contract funds upon behalf of the surety, which perhaps is related to the theory of equitable subrogation. See Pl.Brf. 3.[1] The two additional theories in American's complaint– a three-way contract and the Government as fiduciary – appear to have been abandoned in American's response. Moreover, American has yet

[1]"Pl.Brf.__" refers to a page of "Plaintiff's Response Brief To Defendant's Motion For Summary Judgment."

to provide a satisfactory reason for the Government to be held liable for conduct which the American supported throughout the contract, the payment of all contract funds to G & C. Thus, we first address to the Government's responsibilities to American pursuant to the contract.

## ARGUMENT

### I. The Government Violated No Equitable Duty To American

The Government's duty to the surety to protect contract funds is quite limited, notwithstanding generalized statements in the case law cited by American to the contrary. As described in our motion, the Government's responsibility to retain contract funds is only triggered by a request by a surety to do so, see Fireman's Fund Insurance Company v. United States, 909 F.2d 495, 499 (Fed. Cir. 1990), or by contract provisions dictating such retention. National Surety Corp. v. United States, 118 F.3d 1542 (Fed. Cir. 1997). Neither circumstance applies here.

American does not dispute that it never requested that the Government make payments to anybody but G & C. Pl.Brf. 3. Moreover, American does not allege that any event which would trigger its rights under an equitable subrogation theory occurred prior to the alleged overpayments.[2] Instead, American relies upon National Surety to support its assertion of an equitable duty.

The case before the Court is more like the circumstances presented by Firemen's Fund than those in National Surety. As described in our motion, the contract in National Surety required retainage of 10 percent of the progress payments until certain contractually described "arrow diagrams" had been submitted by the contractor and approved by the

[2] We, by no means, concede that any such overpayments occurred in this case.

contracting officer. 118 F.3d at 1547. Notably, the contract in National Surety "gave no discretion to the government" to depart from this requirement. Id. The contract in Firemen's Fund, which the Court of Appeals for the Federal Circuit ("the Federal Circuit") found to impose no duty upon the Government, was similar to the contract here, for it "provided that the government would make periodic payments to [the contractor] but retain ten percent of each unless the contractor made satisfactory progress during a payment period." Firemen's Fund, 909 F.2d at 496. This is very much like the contract here, which permits, but does not require, a withholding of progress payments. Although American quotes a portion of the contract in its brief, nothing in that excerpt of the contract acts to limit the contracting officer's discretion. See Pl.Brf. 7. The portion of the contract cited by American affirmatively states that the contracting officer "shall make progress payments," see id.; in contrast, the relevant portion of the contract in National Surety directed that the "contract shall have 10 percent retainage withheld." 118 F.3d at 1543. Thus, the relevant clause in National Surety required presumptive retainage while the relevant clause in our case requires presumptive payment.

American's reliance upon Int'l Fiduciary Insurance Co. v. United States, 41 Fed. Cl. 706 (1998), is similarly inapposite. In International Fiduciary, the surety requested that all payments be made to it and the Government responded to this request by executing a contract modification which required that all payments be made to the surety instead of the contractor. 41 Fed. Cl. at 708-09. Thus, not only did the surety provide notice to the Government that all payments should be made to it, but the terms of the contract were amended to require that all payments be made to the surety. The Government's failure to comply with these terms of the contract formed the basis for the judgment against it. Id. at 719. In our case, there was neither notice to the Government

that there should be a change in the recipient of the funds, nor was there a change to the terms of the contract, itself, making such a directive. Thus, Firemen's Fund remains controlling. Unless the contractual terms explicitly limit the Government's ability to make progress payments or the surety requests that such payments be halted, "the surety protects the government's interest, not the other way around." 909 F.2d at 499.[3]

II The Government Complied With American's Request To Continue Paying G & C

As discussed in our earlier brief, American never requested that contract funds be paid to it instead of G & C. Accordingly, the theory of equitable subrogation does not provide American a cause of action against the Government. See, generally, Insurance Company of the West v. United States, 243 F.3d 1367, 1369-70 (Fed. Cir. 2001) ("ICW") (requiring payment to surety only upon its request). American asserts that because the Government knew that it effectively took over contract administration, the Government remains liable for funds paid to G & C. Pl.Brf. 6. This assertion is not supported by the law.

We recognize that American became intimately involved in performance of the contract by entering a takeover agreement with G & C. See Pl.Brf. 1 - 2. Nevertheless, at no point did American enter a default against G & C under its surety agreement or execute a takeover agreement with the Government. Comp. 16 - 17.[4] Moreover, American directed the Government

---

[3] American has cited a Ninth Circuit case, Transamerica Insurance Co. v. City of Kennewick, 785 F.2d 660 (9th Cir. 1986), for additional support for the proposition that the Government is liable to a surety for "overpayment." Pl.Brf. 4, n.19. This case is inapplicable. Transamerica was a diversity action, dependent upon Washington state law. 785 F.2d at 661. Firemen's Fund, which was issued subsequent to Transamerica and interpreted the law in the Federal Circuit, is plainly controlling.

[4] "Comp. __" refers to a paragraph of American's complaint.

to continue to pay all funds to G & C. App. 1 - 2.[5] American does not seriously dispute this. Pl.Brf. 6. Instead, it claims that our argument that G & C was paid the remaining funds is "misleading, since G & C was not paid the remaining contract funds." Id. While G & C and American may have had an agreement that payments to G & C would be provided to the surety or its agent, that does not change the fact that the parties agreed contract payments would remain payable to G & C. Thus, there was no event which triggered American's right to equitable subrogation of contract funds paid to G & C.

III Counts I And II Of American's Complaint Should Be Dismissed

American's opposition to our motion makes no response to our arguments that Count I of its complaint (involving a"three-party contract of suretyship," see Comp. 24 - 29) and Count II of its complaint (that the Government breached its "fiduciary duty" to American, see Comp. 30 - 34) are not legally viable. Accordingly, American implicitly abandons these claims. E.g., Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 n.2 (9th Cir. 1996). Moreover, our arguments upon these claims remain persuasive in any event. The Federal Circuit has squarely rejected the notion that a suretyship creates a contractual relationship with the Government. Insurance Company of the West v. United States, 243 F.3d 1367, 1370 (Fed. Cir. 2001). Additionally, there is no law supporting the proposition that the United States owes a fiduciary duty to a surety. To the contrary, the limitations upon the Government's duties as set forth in Fireman's Fund, discussed above, support just the opposite conclusion.

[5] "App. __" refers to a page of the appendix attached to Defendant's Proposed Finding of Uncontroverted Fact, filed concurrently with our earlier motion for summary judgment.

## CONCLUSION

For the reasons stated above and our motion for summary judgment, the United States respectfully request that the Court grant our motion for summary judgment and dismiss plaintiff's complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

s/J. Reid Prouty
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-7586
(202) 514-7969 (fax)
Attorneys for Defendant

OF COUNSEL:
J. MACKEY IVES
Department of the Army
Arlington, VA

February 5, 2004